IN THE SUPREME COURT OF NORTH CAROLINA

No. 208A20

Filed 11 December 2020

IN THE MATTER OF: A.P.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 10 February 2020 by Judge Meredith A. Shuford in District Court, Lincoln County. This matter was calendared for argument in the Supreme Court on 23 November 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*J. Fielding Yelverton for appellee Lincoln County Department of Social Services.*

*Stacie C. Knight for appellee Guardian ad Litem.*

*Leslie Rawls for respondent-appellant father and David A. Perez for respondent-appellant mother.*

NEWBY, Justice.

Respondent-mother and respondent-father appeal from the trial court's order terminating their parental rights in the minor child "Amy."[1] Counsel for respondents have jointly filed a no-merit brief under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. Because we conclude the issues identified by counsel as arguably supporting the appeal are meritless, we affirm.

---

[1] We use this pseudonym to protect the juvenile's identity and for ease of reading.

Amy was born in October 2018 in Lincoln County, North Carolina. On the date of Amy's birth, the Lincoln County Department of Social Services (DSS) received a report that respondent-mother tested positive for amphetamines upon her admission to the hospital, "had been using heroin, Suboxone, and other drugs," and would be involuntarily committed, leaving newborn Amy without a caretaker who could consent to medical treatment. Respondent-father, who claimed to be Amy's biological father, was reportedly "at the hospital 'raising cane' " and had to be escorted from the premises.

A DSS social worker responded to the hospital. Medical staff advised her that respondent-mother was in the critical care unit, that she "would be sedated for three to ten days due to withdrawals," and that Amy "would need to be transferred to another hospital for further treatment." Staff had also observed respondent-father arguing with respondent-mother with his hand around her neck. Respondent-father "admitted that he and [respondent-mother] had been using illegal Subutex" and stated that they were living in a tent in Lincolnton but planned to move to South Carolina "with a man named Johnny who[m] they had met on Craigslist."

The following day, DSS obtained nonsecure custody of Amy and filed a juvenile petition alleging she was neglected and dependent. In addition to the events described above, the petition alleged respondent-mother and respondent-father had histories with child protective services involving incidents of substance abuse and domestic

violence as well as prior criminal convictions for impaired driving and drug offenses and pending felony charges.

Respondents appeared in court for a nonsecure custody hearing held on 6 November 2018 but left before their case was called. They did not attend any subsequent hearings in the case but were represented by counsel throughout the proceedings.

The trial court held a hearing on DSS's petition on 11 December 2018 and entered an order adjudicating Amy a neglected and dependent juvenile on 24 January 2019.[2] DSS maintained custody of Amy, and the trial court granted respondents ninety minutes per week of supervised visitation conditioned upon a weekly drug test. The trial court ordered each respondent to obtain substance abuse assessments and follow all treatment recommendations, to submit to random drug screens as requested by DSS, to obtain and maintain stable housing and employment, and to attend parenting classes. The trial court reiterated these requirements in a review order entered on 19 March 2019.

A permanency planning hearing was held on 4 June 2019. In the resulting order entered on 12 July 2019, the trial court established for Amy a primary permanent plan of adoption with a secondary plan of reunification. The court found

---

[2] At the time of the hearing, DSS had not received the results of respondent-father's DNA paternity test, but respondent-father was named on the birth certificate as Amy's father.

respondents had yet to comply with its prior orders, were not cooperating with DSS, and had attended no visits with Amy since 7 December 2018.

On 1 August 2019, DSS filed a petition to terminate respondents' parental rights in Amy. A summons was issued to both respondents the same day. After unsuccessfully attempting to effect personal service upon respondents, DSS filed a motion for leave to serve respondents by publication on 24 September 2019. *See* N.C.G.S. § 7B-1106(a) (2019). The trial court granted the motion after a hearing held on 1 October 2019. In its order, the court detailed the steps undertaken by DSS to ascertain the "current address or whereabouts" of respondents and found the agency "has made diligent efforts to serve a copy of the petition and summons on the parents . . . through multiple addresses, all of which [have] been returned unserved." The court directed DSS to serve respondents by publication in both Lincoln County and McDowell County, North Carolina. Counsel subsequently filed affidavits with the court confirming DSS had served respondent-mother and respondent-father in accordance with the procedures in N.C.G.S. §§ 1-75.10(a)(2) and 1A-1, Rule 4(j1)–(j2)(3) (2019) by publishing a separate "Notice of Service of Process by Publication" addressed to each respondent in the *Lincoln Times-News* newspaper on 14, 21, and 28 October 2019 and in *The McDowell News* on 25 October, 1 November, and 8 November 2019.

The trial court held a termination of parental rights hearing on 21 January 2020. Respondents did not attend the hearing but were represented by counsel,

neither of whom objected to the form of service or to the court's exercise of personal jurisdiction over their client. *See generally In re J.T.*, 363 N.C. 1, 4, 672 S.E.2d 17, 18 (2009) (noting that "any form of general appearance 'waives all defects and irregularities in the process and gives the court jurisdiction of the answering party even though there may have been no service of summons' " (quoting *Harmon v. Harmon*, 245 N.C. 83, 86, 95 S.E.2d 355, 359 (1956))).

Based on the evidence adduced by DSS and the guardian *ad litem*, the trial court entered an order on 10 February 2020 terminating respondents' parental rights in Amy. As grounds for termination, the court concluded that respondents had neglected Amy and were likely to subject her to further neglect if she returned to their care and that respondents had willfully failed to pay a reasonable portion of Amy's cost of care for the six-month period immediately preceding the filing of the petition to terminate their parental rights. N.C.G.S. § 7B-1111(a)(1), (3) (2019). The court also considered the dispositional factors in N.C.G.S. § 7B-1110(a) (2019) and determined it was in Amy's best interests that respondents' parental rights be terminated. Respondents each filed and served timely notice of appeal.

Counsel for respondent-mother and respondent-father have jointly filed a no-merit brief on behalf of their clients pursuant to Rule 3.1(e) of the Rules of Appellate Procedure. In their brief, counsel identified three issues arguably supporting an appeal but explained why they believed these issues lacked merit. Counsel also advised respondent-mother and respondent-father of their right to file pro se written

arguments with this Court and provided them with the documents necessary to do so. Neither respondent has submitted written arguments to this Court.

We carefully and independently review the issues identified by counsel in a no-merit brief in light of the entire record. *In re L.E.M.*, 372 N.C. 396, 402, 831 S.E.2d 341, 345 (2019). Having undertaken this review, we are satisfied that the trial court properly exercised personal jurisdiction over respondents and that its 10 February 2020 order is supported by clear, cogent, and convincing evidence and based on proper legal grounds. We therefore affirm the order terminating respondents' parental rights.

AFFIRMED.